## SPENCER v. HOUGHTON.*

### No. 8162; April 29, 1885.

#### 6 Pac. 853.

Guardian—Release of Surety.—Where the defendant became a surety in place of a surety on the former bond of a guardian, he and the other sureties on the former bond became joint obligors, though their contracts were contained in different instruments; and under the law, as it existed in California in 1871, a release of one of the joint obligors released all the co-obligors, and therefore, under an order releasing all the obligors on the former bond, but not including the defendant in the release, his liability ceased at the time of such release, and he cannot be held liable for any subsequent defalcation.

*For opinion in bank, see Spencer v. Houghton, 68 Cal. 82, 8 Pac. 679.

APPEAL from the Superior Court of the City and County of San Francisco.

John Reynolds for appellant; Taylor & Haight for respondent.

MYRICK, J.—Action against a surety on a guardian's bond. The points made by the surety on this appeal may be resolved into three, viz.: (1) The defendant was released and discharged of all liability; (2) there has been no legal ascertainment by the probate court of the amount due from the guardian; (3) the action is barred by the statute of limitations.

While the plaintiff, Josephine M. Spencer, was a minor (then Josephine M. Richardson), W. Harney was the guardian of her person and estate. In 1870 he was discharged as such guardian, and H. M. Hastings was appointed in his stead, and after qualifying Hastings received from Harney ten thousand dollars and upward, property of the ward. Hastings' bond was in the sum of twenty-eight thousand dollars, with E. B. Mastick and A. A. Cohen as sureties (jointly and severally with Hastings) in the sum of fourteen thousand dollars, and with H. P. Livermore and H. H. Haight as sureties (jointly and severally with Hastings) in the sum of fourteen thousand dollars. On the 14th of September, 1871, Livermore filed a petition in the probate court to be discharged from liability for future acts of his principal, and such proceedings were had that (on waiver by Hastings of service of citation) the court made an order that said Hastings give other security in place of Livermore, as prayed for in said petition. On the 21st of September, 1871, and in pursuance of such order, said Hastings and the defendant herein, S. O. Houghton, executed a bond to said ward by which, after reciting the facts of the execution of the former bonds, the petition of Livermore, and the order for other security, they bound themselves, Hastings as principal and Houghton as surety, in the place and stead of Livermore, jointly and severally, in the sum of fourteen thousand dollars, portion of the sum of twenty-eight thousand dollars; the condition of the bond being that if said Hastings, as guardian, faithfully execute the

30

duties of his trust according to law, the bond should be void, else to remain in full force and effect. On the tenth day of January, 1872, the said H. H. Haight filed a petition praying to be released from all responsibility on account of future acts of said Hastings, and such proceedings were had (Hastings having waived service of citation) that on the same day the court made an order that said Hastings file another bond in the sum of twenty-four thousand dollars, it then appearing that the personal estate of the ward did not exceed twelve thousand dollars. Hastings accordingly, on the 19th of February, 1872, filed a bond in the sum of twenty-four thousand dollars, with sureties as follows: S. A. Hastings and B. S. Brooks, jointly and severally, in the sum of six thousand dollars, portion of said sum of twenty-four thousand dollars; John Currey and T. I. Bergin, jointly and severally, in the sum of six thousand dollars, portion as aforesaid; S. W. Holladay and H. K. W. Clarke, jointly and severally, in the sum of six thousand dollars, portion as aforesaid; and Earl Bartlett and J. H. Smyth, jointly and severally, in the sum of six thousand dollars, also portion as aforesaid. Upon the approval of this bond an order was made by the probate court that said Mastick, Cohen, and Haight, sureties on the former bond, be released from all responsibility for the future acts of the guardian. The name of the defendant, Houghton, was not included in this order. On the 18th of October, 1877, after the said Josephine had attained majority, she executed to Haight, Mastick, and Livermore an instrument acknowledging the receipt from them of fifteen hundred dollars, and releasing them from all liability on the bond executed by them. On the 10th of September, 1877, she executed a like release to A. A. Cohen, acknowledging the receipt of five hundred dollars.

The said Hastings departed from this state in the fall of 1872, and never returned. The said Josephine attained majority, February 11, 1874. The said Hastings having failed to file an account, the said court, on the 25th of March, 1878, on petition of the said Josephine, made an order that said Hastings file an account within thirty days after service on him of such order. No citation was issued, but a copy of the order was served upon Hastings on the 10th of April, 1878, at the city of Washington. Hastings did not file an

account, and has never complied with the requirement of said order. After thirty days from the said service, the said Josephine, by her attorney, prepared an account from the records and papers on file in the probate court in said case, and filed the same, and petitioned the court that the same be allowed as and for the account of said Hastings. The said court thereupon fixed a day for the settlement of the account, and directed notice thereof to be given by posting. On the day fixed, the court appointed a referee to examine and revise the account, and after examination and the hearing of the evidence of witnesses produced by the said Josephine, the referee reported that there was a balance of six thousand twelve dollars in favor of said Josephine due from said Hastings, and the court thereupon made an order settling the account as and for the final account of said Hastings, guardian, at the said sum of six thousand and twelve dollars.

Before the commencement of this action, plaintiff forwarded to Hastings a certified copy of the order settling the account, and demanded of him payment of the said sum due, but he refused and neglected to pay the same, or any part thereof. After the said Josephine attained majority, she executed releases to several of the sureties, for the consideration of five hundred dollars each, viz.: September 10, 1877, to A. A. Cohen, and October 18, 1877, to H. H. Haight, E. B. Mastick and H. P. Livermore. It appears from the report of the referee that other sureties paid to Josephine the sum of five hundred dollars each, viz., T. I. Bergin, S. W. Holladay, Earl Bartlett, H. K. W. Clarke, B. S. Brooks and S. A. Hastings.

1. The defendant claims that the release by plaintiff of Mastick, Cohen and Haight was a release of him, the defendant, on the ground that the release of one or more joint obligors is a release of all. Since the date the codes went into effect (January 1, 1873), it has been and is the law of this state (section 1543, Civil Code) that a release of one of two or more joint obligors does not extinguish the obligation of any of the others, unless they are mere guarantors; nor does it affect their right to contribution. Prior to that day, it was the law that a release of one joint or joint and several obligor or debtor released the others (Prince v. Lynch, 38 Cal. 531, 99 Am. Dec. 427), unless the instrument of release contained words to show an intent that it should be less than a full release of the party

released.   Whether this change in the law affects the obliga-
tions of any of the sureties (the bond in suit being executed
before the code) I express no opinion.

Under the statute of this state which existed prior to the
code (section 39 of the act concerning guardians), the pro-
bate judge might require a new bond to be given by a guard-
ian whenever he might deem it necessary, and might discharge
the existing sureties from further liability.   In accordance
with that authority, the probate judge on the 10th of Janu-
ary, 1872, made an order that Hastings file another bond, in
the sum of twenty-four thousand dollars, double the then
value of the personal estate of the ward; and such bond was
accordingly executed, and was approved and filed.   The judge
made an order releasing the other sureties, but such order did
not contain the name of Houghton.   It therefore remains to
be seen if Houghton was a joint obligor with the sureties
whose names were mentioned.   It was held in Dering v. Earl
of Winchelsea, 1 Cox, 318 (White & T. Lead. Cas. Eq. 100),
in regard to contribution, that it made no difference whether
the sureties had signed the same or different instruments;
that the real question was, Had they contracted with the
principal to become liable for the same fund? and if so, equity
would reach through the form, and would regard them as
joint obligors.   The same view is taken in the notes of Hare
and Wallace, commencing on page 134.

It may be added that by an act passed March 27, 1857,
supplementary to the guardian act, sections 78 to 87 of the
probate act were made applicable to guardians; and under
those sections the probate judge had authority to accept a
surety in the place of any of those in a former bond, and to
release the surety whose place was thus supplied.   These sec-
tions, and the action of the probate judge in approving the
bond of Houghton and discharging Livermore, are of material-
ity as to the suggestion that, but for these sections, the dis-
charge of Livermore acted as a discharge of Haight, Mastick,
and Cohen.   If there had been defalcation by Hastings before
February, 1872, and Houghton had been compelled to pay
the amount, he could have enforced contribution from Cohen,
Mastick and Haight.   That being so, it follows there was a
joint liability; and it also follows, under the law then exist-
ing, that the taking of a new bond, and the release of Cohen,

Mastick and Haight by the judge in February, 1872, released Houghton, at least from liability for any defalcation thereafter to occur. It does not appear that any defalcation occurred prior to that time; on the contrary, it would seem from the order of the probate judge that the guardian then had the personal estate of the ward in hand. The new bond, when given, was to take the place of the old, at least as to future acts, and the new sureties were to be liable therefor.

Since the codes went into effect the plaintiff has received from the sureties named in the first bond, and from those named in the last, sums aggregating seven thousand dollars, and has released them; but whether under section 1543, Civil Code, above referred to, this affects the question before us, I express no opinion. The purpose of the present suit is to hold Houghton for the whole of the balance claimed to be unpaid, six thousand and twelve dollars, and interest thereon. For the reasons given above I am of opinion that the taking of the new bond, and the discharge by the probate judge of his co-obligors, released the defendant, Houghton, as to any defalcation thereafter to arise: People v. Buster, 11 Cal. 215. It may be added that for any liability on the part of Livermore arising during the time he was surety the plaintiff received compensation and executed a release; that the defendant, Houghton, was liable for defalcation occurring from September 21, 1871, to February 19, 1872, and there is nothing to show that any defalcation occurred between those days. The action is not based on a defalcation occurring during that time.

From the views above expressed, I do not deem it necessary to consider the other points presented.

Judgment and order reversed and cause remanded for a new trial.

THORNTON, J.—Houghton became a cosurety with Haight on the 21st of September, 1871, and continued so to be until the taking of the bond with eight sureties on the 19th of February, 1872, when Haight was discharged by order of court from all future defaults of the guardian. It appears that Haight (Houghton's cosurety) was released, for a sum paid in 1877, by the ward (plaintiff here), who had then attained her majority. Did not this release Houghton? It is said

it did not, because at that time the Civil Code was in force, and it was provided by section 1543 that "a release of one of two or more joint debtors does not extinguish the obligations of any of the others, unless they are mere guarantors; nor does it affect their right to contribution from him." Does this section apply to the case of sureties? We are inclined to think it does not: See Civ. Code, secs. 2819, 2840. But in the view we take of the case, it is unnecessary to decide it.

Conceding that section 1543, Civil Code, would apply to sureties in case the bond in question had been taken after the code went into effect, as the bond was taken prior to that time, we are of opinion that it does not affect it. The right to have contribution from his cosurety, Haight, should he be compelled to pay, vested in Houghton when he became joint surety with Haight in 1871. This right accrued to and vested in Houghton at the time he became a joint surety with Haight, on the happening of the event mentioned above, though the event had not happened; and of this right he could not be devested by any subsequent legislation. The right above mentioned vested in Houghton by virtue of his contract of cosuretyship, and this obligation could not be impaired by any subsequent act of the legislature.

We are of opinion that the release of Haight, in 1877, released Houghton. Further, Houghton was a joint surety with the eight sureties, to the extent of fourteen thousand dollars. The ward, after attaining her majority, in 1877 and 1878, for sums paid, released several of these eight sureties. This released Houghton by operation of law. We are further of opinion that the decree or order of the probate court, made in 1878, adjudging the amount due by the guardian, did not bind the sureties. Hastings, the guardian, never had notice of this proceeding, and therefore the sureties were not bound. The service of the order of the court, made on Hastings in Washington city, was no service. Such service could only be made by citation (Code Civ. Proc., secs. 1707, 1708, 1709), and here it appears that no citation was issued, but an order was made by the court and directed to be served.

It is said that Hastings had left the state at the time that it became essential to notify him, and that therefore the citation could not be served on him; and, further, that it is provided in section 1710, Code of Civil Procedure, that "when

personal notice is required, and no mode of giving it is prescribed in this title, it must be given by citation,'' and as there could be no personal service, the person to be cited having left the state, citation was not required. We are of the opinion that service could be made in a mode provided by law. By section 1709, Code of Civil Procedure, it is declared that ''the citation must be served in the same manner as the summons in a civil action.'' A summons in a civil action can be served on a person who has departed from the state, by publication (sections 412, 413), and by section 1709, above quoted, a citation can be served in the same way. The mode of procedure under this statute for serving summons by publication, where a person has departed from the state, or resides out of the state, etc., is applicable to the service of a citation by publication.

As to what is enacted in section 1710, Code of Civil Procedure, its meaning is that where actual service is directed to be made on the party personally, and not by publication, it must be made by citation. This is not inconsistent with service of a citation by publication in a case where the party to be served has departed from the state, or resides out of it. The two sections, 1709 and 1710, may thus be readily reconciled. It certainly could not have been the intention of the legislature to say in one section that a citation can be served by publication, and in the next that a citation could only be served by actual personal service.

From what has been said above, our conclusion is that the settlement of the account by the probate court, having been made without notice to the guardian, was not binding on Houghton, and was not admissible in evidence against him. It results from the foregoing that the judgment must be reversed and the cause remanded for a new trial; and it is ordered accordingly.

We concur: McKinstry, J.; McKee, J.; Morrison, C. J.

Sharpstein, J., took no part in the consideration of this cause.